IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA        :
DEPARTMENT OF ENVIRONMENTAL         :
PROTECTION,                          :
                                     :
      - Plaintiff                       :
                                     :
v.                                   :    Civil Action - Law
                                     :
TRAINER CUSTOM CHEMICAL LLC,         :
JAMES HALKIAS, and                   :
JEREMY HUNTER                        :
                                     :
      - Defendants                      :

## COMPLAINT

The Commonwealth of Pennsylvania, Department of Environmental Protection ("Department"), through its undersigned counsel, hereby files this Complaint against the above-captioned Defendants, and, in support thereof, respectfully avers the following:

### Preliminary Statement

1. This is a Complaint under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq*, and the Pennsylvania Hazardous Sites Cleanup Act ("HSCA"), Act of October 18, 1988, P.L. 756, No. 108, 35 P.S. § 6020.101 *et seq.*, for the recovery of response costs expended by the Department at the Stoney

1

Creek Site ("Site") in Trainer, Delaware County, Pennsylvania. As a result of the release or threatened release of hazardous substances at the Site, the Department has conducted response actions within the meaning of both CERCLA and HSCA and has incurred substantial costs. This action is brought pursuant to Section 9607 of CERCLA, 42 U.S.C. § 9607, and Section 507 of HSCA, 35 P.S. § 6020.507, and is intended to recover such costs on behalf of the citizens of the Commonwealth.

## Jurisdiction

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 42 U.S.C. §§ 9607 and 9613(b). This Court has pendent jurisdiction over Counts II, IV and VI as set forth below.

## Parties

2. Plaintiff, the Department of Environmental Protection, is the agency of the Commonwealth vested with the duty and responsibility to administer and enforce the provisions of HSCA and the rules and regulations duly promulgated thereunder.

3. Defendant Trainer Custom Chemical LLC ("TCC") is an entity which is purported to be a Limited Liability Company organized and operating under the laws of the Commonwealth with an address of 4075 Linglestown Road, No. 244, Harrisburg, PA 17112.

4. Defendant James Halkias ("Halkias") is an adult individual with a Pennsylvania address of 5540 Westbury Drive, Enola, PA 17025.

5. Defendant Jeremy S. Hunter ("Hunter") is an adult individual with a Pennsylvania address of 799 Old Quaker Road, Lewisberry, PA 17339.

**The Site and Response Actions Undertaken**

6. The Stoney Creek Site is located at 3300 West 4th Street, Trainer, Delaware County, Pennsylvania, folio numbers 46-00-00374-00 and 49-11-00436-01. The Site consists of a former chemical manufacturing facility, several buildings, a water treatment plant, and various pipelines and other equipment which were used in the chemical manufacturing operations.

7. As of April, 2007, the Site contained approximately 3 million pounds of flammable or combustible chemicals posing the threat of release and fire at the Site through improper handling or storage in drums, open containers, water treatment vessels, piles, trenches, drains, and other places. Such chemicals included, but were not limited to, methanol, heptane, morpholine, oleum (fuming sulfuric acid), acetic acid, and sodium hydroxide.

8. As of April, 2007, the Site was owned by Stoney Creek Technologies, LLC. At that time, there was a release or threatened release of hazardous substances at the Site within the meaning of Section 104 of CERCLA, 42 U.S.C. § 9604, and Section 501(a) of HSCA, 35 P.S.

§ 6020.501(a), from the improper handling, storage and/or disposal of numerous chemicals located thereon.

9. In April, 2007, the facility maintained a vaporized nitrogen system which created low moisture conditions to minimize the threat of fire posed by the flammable and combustible chemicals contained within certain tanks. The vaporized nitrogen system was connected to a solvent recovery system.

10. The vaporized nitrogen system, water treatment plant, and other pollution control or security features at the Site were heavily dependent upon electricity to prevent fire or chemical release.

11. Due to conditions at the Site in 2007, the United States Environmental Protection Agency ("USEPA") initiated removal response actions under the authority of CERCLA. Such actions consisted of removing chemicals from tanks, equipment and piping, decontaminating exterior surfaces to prevent migration of hazardous substances, and decontaminating and reconfiguring the Site's storm water system and wastewater treatment plant.

12. At the time that EPA commenced removal actions at the Site, Stoney Creek Technologies was experiencing financial difficulties. As a result, the Department, in cooperation with the USEPA, learned that the local electric power company intended to shut off electricity to the facility due to the failure of Stoney Creek Technologies to pay its electric bills.

13. Beginning on or about April 27, 2007, the Department, in cooperation with the USEPA, undertook response action at the Site by paying the facility's electric bills in order to supply the pollution prevention and security systems at the Site with sufficient electric power and thereby support the USEPA's ongoing removal actions.

14. The pollution prevention and security systems at the facility were so energy-consuming that the Department often expended in excess of $30,000 per month in electric costs. For example, the Department expended the following amounts in the first six months of 2009: $31,568.81 on January 15, 2009; $33,278.74 on February 17, 2009; $31,514.63 on March 20, 2009; $31,362.19 on April 6, 2009; $30,833.25 on April 20, 2009; $28,570.36 on May 18, 2009; and $27,354.72 on June 15, 2009.

15. On or about late August of 2012, removal actions conducted at the Site by the USEPA and the Department, as identified in Paragraphs 11-14 above, were completed.

16. In undertaking the response action identified in Paragraphs 13 and 14 above, the Department has incurred costs in excess of $860,655.37.

**TCC, Its Principals, and the Purchase of the Site**

17. On or about July 13, 2012, Halkias and Hunter entered into a "Bidding agreement between repository bidders as of 2012" ("Bidding Agreement"). In the Bidding Agreement,

Halkias and Hunter agreed that: (1) Halkias would not bid or tell anyone else about the Site; (2) Halkias would be held accountable to damages in the amount of $2,000,000.00 "if I cause mr [sic] hunter not to win bid by either bidding against him or having someone else bid;" (3) Halkias will pay $20,000 for the Site; (4) Halkias "will not sale or remove and [sic] items without Mr. Hunter's permission;" and (5) "both parties agree to enter a partnership 50/50 to buy [the Site]."

18. On September 17, 2012, Hunter entered into an Agreement with the Borough of Trainer related to the Site ("Trainer Agreement"). The Trainer Agreement states that "a bid in the amount of $20,000 to purchase the [Site] was submitted to the Delaware County Tax Claim Bureau by Jeremy S. Hunter" and that the Borough of Trainer believes that the Site "has considerable value which can be realized upon the completion of environmental remediation."

19. The Trainer Agreement further states that "Jeremy Hunter makes and enters into this agreement for himself and for his partners, transferees, successors and assigns" and that the Borough of Trainer will consent to the sale of the Site "to Jeremy Hunter and/or his partners, transferees, successors and assigns" upon the condition that a lien shall be filed and recorded in favor of the Borough of Trainer and against the Site in the amount of $85,608.50. Lastly, the Trainer Agreement states that "[i]n the event that there is any issue relative to the filing, legality, or effectiveness of the aforementioned lien, Jeremy S. Hunter, for himself, his partners, his transferees, successors, and assigns, will execute any and all documents necessary to have the aforesaid sum of $85,608.50 filed and recorded as an *in rem* confession of judgment."

20. On October 5, 2012, TCC filed a Certificate of Organization with the Commonwealth of Pennsylvania, Department of State, as a Limited Liability Company. Both James P. Halkias and Jeremy S. Hunter were listed in the Certificate as "organizers".

21. On or about October 15, 2012, TCC allegedly purchased the Site from the Repository List of Properties managed by the Delaware County Tax Claim Bureau. The amount of the purchase was $20,000. Purchase of the Site was made by cashier's check drawn from Halkias' personal bank account.

22. Based upon information and belief, the Department avers that TCC has never held or maintained assets in the form of bank accounts or other financial holdings, stocks, bonds, or other valuable property or commodities other than its purported ownership of the Site. Thus, TCC is undercapitalized to the point of having no assets or capital at all.

23. For at least nine months following the purchase, Halkias personally paid utility bills at the Site rather than TCC.

24. On April 13, 2012, approximately six months before the purchase of the Site from the Delaware County Tax Claim Bureau's Repository List, Halkias registered a Business Entity with the Pennsylvania Corporations Bureau in the name of "JK Myers Contracting", a fictitious name.

25. Following purchase of the Site in October, both Halkias and Hunter repeatedly engaged in activities designed to dispose of TCC's assets by demolishing buildings located on the Site and selling off valuable recycled metals or other assets to interested buyers.

26. From at least January 1, 2013 to at least February 19, 2014, Halkias reclaimed recyclable materials such as copper and aluminum from the Site and sold them to various entities in a total amount equal to or greater than $875,321.42. All proceeds from the sale of these recyclable materials were paid to JK Myers Contracting and not to TCC.

27. On August 5, 2013, the Site was purportedly sold to JK Myers Contracting. Based upon information and belief, the Department avers that no corporate formalities were performed on behalf of TCC in connection with this sale of the Site.

28. On August 9, 2013, Halkias, individually and d/b/a JK Myers Contracting, and TCC filed a Complaint in the Delaware County Court of Common Pleas against Hunter. In this Complaint, docketed at No. 13-7881, Halkias made numerous allegations against Hunter related to tortious conversion of TCC's assets for the benefit of Hunter. Counts in the Complaint include Declaratory Judgment, Ejectment, Quiet Title, Fraud, Conversion, Breach of Contract and Unjust Enrichment. The averments set forth in the Complaint were formally verified by Halkias.

29. On November 21, 2013, Department inspectors visited the Site and observed that rapid demolition of all piping, tanks and buildings was taking place, thereby creating the release or

threatened release of hazardous substances thereon. In order to determine the need for potential further response action, the Department inspectors conducted additional response actions by collecting soil sediment and surface water samples at the facility. The cost associated with this additional interim response work was in excess of $27,619.14.

30. As of the date of this Complaint, there continue to be releases or threatened releases of hazardous substances at the Site within the meaning of both CERCLA and HSCA.

31. On November 19, 2013, Hunter filed a Complaint in the Delaware County Court of Common Pleas against Halkias and JK Myers Contracting. In this Complaint, which is docketed at No. 13-9310, Hunter made numerous allegations against Halkias and JK Myers Contracting related to tortious conversion and fraudulent transfer of TCC's assets for the benefit of Halkias. Counts set forth in this Complaint include Equitable Relief (two counts seeking to vacate transfer of the Site), Conversion (two counts), Breach of Contract, violation of the Pennsylvania Limited Liability Company Law, and Fraud.

32. On December 4, 2013, the Court of Common Pleas of Delaware County, PA, per the Honorable Charles B. Burr, II, issued an Order granting, in part, the following relief:

    (1) Enjoining Halkias and JK Myers from transferring the Site to any third party;

    (2) Enjoining Halkas and JK Myers from conducting any operation of the Site and its assets or removing any of TCC's assets from the Site; and

(3) Cancelling the deed that purported to transfer title to the Site from TCC to JK Myers.

33. In August of 2014, the Department determined that the presence of asbestos from the demolition activities at the Site violated Pennsylvania law and created a public nuisance. In addition, the Department determined that such demolition activities constituted violations of the Pennsylvania Solid Waste Management Act, the Air Pollution Control Act, and a public nuisance. The Department's Air Quality and Waste Management programs have initiated enforcement action in order to address continuing threats from asbestos and other remaining wastes at the Site.

34. TCC has not adhered to corporate formalities necessary to uphold the liability protections set forth in Pennsylvania law for Limited Liability Companies.

35. Neither TCC, Halkias nor Hunter have complied with necessary corporate formalities, Halkias and Hunter have commingled their personal assets with those of TCC, Halias and Hunter have undercapitalized TCC, and Halkias and Hunter have personally engaged in activities intended to dispose of the assets of TCC for their personal benefit such that the liability protections under Pennsylvania Law for Limited Liability Companies shall not apply.

## COUNT I - COST RECOVERY AGAINST TCC UNDER CERCLA

36. Paragraphs 1-35 are incorporated as if fully set forth herein.

37. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), states that, notwithstanding any other provision of law or regulation and subject only to the defenses set forth therein, "the owner and operator of a facility . . . from which there is a release, or a threatened release which causes the incurrence of response costs, or a hazardous substance, shall be liable for . . . all costs of removal or remedial action incurred by . . . a State."

38. The Site is a "facility" as defined in Section 101 of CERCLA, 42 U.S.C. § 9601.

39. There is, and has been since at least April of 2007, a continuous release or threatened release of a hazardous substance and/or substances at the Site within the meaning of Sections 101 and 107 of CERCLA, 42 U.S.C. §§ 9601 and 9607.

40. TCC, as the owner and operator of the Site from at least October 15, 2012, until August 5, 2013, is a responsible person under Section 107 of CERCLA, 42 U.S.C. § 9607, for the release or threatened release of hazardous substances at the Site and is therefore liable to the Department for its removal response costs.

41. As a result of the release or threatened release of hazardous substances at the Site, the Department has incurred interim response costs in excess of $888,274.51.

**WHEREFORE**, the Department requests this Honorable Court to grant judgment against TCC in favor of the Department in the amount of at least $888,274.51.

## COUNT II: COST RECOVERY AGAINST TCC UNDER HSCA

42. Paragraphs 1-41 are incorporated as if fully set forth herein.

43. Section 701 of HSCA, 35 P.S. § 6020.701, states that a person shall be responsible for a release or threatened release of a hazardous substance from a Site when "(1) the person owns or operates the site (i) when a hazardous substance is placed or comes to be located in or on a site; . . . or (iii) during the time of the release or threatened release."

44. Section 702(a)(i) of HSCA, 35 P.S. § 6020.702(a)(i), states that a person who is responsible for a release or threatened release under Section 701 is strictly liable for interim response costs which are reasonable in light of the information available to the Department at the time the interim response was taken. 35 P.S. § 6020.702(a)(i).

45. The Stoney Creek Site constitutes a "Site" within the meaning of Section 103 of HSCA, 35 P.S. § 6020.103.

46. There is and has been since at least April of 2007 a continuous release or threatened release of a hazardous substance and/or substances at the Site within the meaning of Sections 501 and 701 of HSCA, 35 P.S. §§ 6020.501 and 6020.701.

47. TCC is a "person" within the meaning of Section 103 of HSCA, 35 P.S.

§ 6020.103.

48. TCC, as the owner of the Site from at least October 15, 2012, until August 5, 2013, is a responsible person under Section 701 of HSCA, 35 P.S. § 6020.701, for the release or threatened release of hazardous substances at the Site and is therefore liable to the Department for interim response costs as set forth in Section 702 of HSCA, 35 P.S. § 6020.702.

49. As a result of the release or threatened release of hazardous substances at the Site, the Department has incurred interim response costs in excess of $888,274.51.

50. Section 507(b) of HSCA, 35 P.S. § 6020.507(b), states that, in an action to recover response costs, the Department shall include administrative and legal costs incurred from the date of its initial investigation and that the amount attributable to such costs shall be 10% of the amount paid for the response actions or the actual costs, whichever is greater.

**WHEREFORE**, the Department requests this Honorable Court to grant judgment against TCC in favor of the Department in the amount of $888,274.51 plus administrative and legal costs as identified in Paragraph 50 above.

### COUNT III - COST RECOVERY AGAINST HALKIAS UNDER CERCLA

51. Paragraphs 1 - 50 are incorporated as if fully set forth herein.

13

52. Neither TCC, Halkias nor Hunter have complied with necessary corporate formalities, Halkias and Hunter have commingled their personal assets with those of TCC, Halkias and Hunter have undercapitalized TCC, and Halkias and Hunter have personally engaged in activities intended to dispose of the assets of TCC for their personal benefit such that the liability protections under Pennsylvania Law for Limited Liability Companies shall not apply.

53. Halkias, as "operator" of the Site within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), is personally, jointly and severally liable to the Department in the same manner as TCC for removal response costs incurred in responding to the release or threatened release of hazardous substances at the Site.

**WHEREFORE**, the Department requests this Honorable Court to grant judgment against Halkias in favor of the Department in the amount of at least $888,274.51.

### COUNT IV: COST RECOVERY AGAINST HALKIAS UNDER HSCA

54. Paragraphs 1-53 are incorporated as if fully set forth herein.

55. Halkias is a "person" within the meaning of Section 103 of HSCA, 35 P.S. § 6020.503.

56. Neither TCC, Halkias nor Hunter have complied with necessary corporate

formalities, Halkias and Hunter have commingled their personal assets with those of TCC, Hakias and Hunter have undercapitalized TCC, and Halkias and Hunter have personally engaged in activities intended to dispose of the assets of TCC for their personal benefit such that the liability protections under Pennsylvania Law for Limited Liability Companies shall not apply.

**WHEREFORE**, the Department requests this Honorable Court to grant judgment against Hallkias in favor of the Department in the amount of $888,274.51 plus administrative and legal costs as identified in Paragraph 50 above.

### COUNT V - COST RECOVERY AGAINST HUNTER UNDER CERCLA

57. Paragraphs 1 - 56 are incorporated as if fully set forth herein.

58. Neither TCC, Halkias nor Hunter have complied with necessary corporate formalities, Halkias and Hunter have commingled their personal assets with those of TCC, Halkias and Hunter have undercapitalized TCC, and Halkias and Hunter have personally engaged in activities intended to dispose of the assets of TCC for their personal benefit such that the liability protections under Pennsylvania Law for Limited Liability Companies shall not apply.

59. Hunter, as "operator" of the Site within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), is personally, jointly and severally liable to the Department in the same manner as TCC and Halkias for removal response costs incurred in responding to the release

or threatened release of hazardous substances at the Site.

**WHEREFORE**, the Department requests this Honorable Court to grant judgment against Hunter and in favor of the Department in the amount of $888,274.51.

### COUNT VI: COST RECOVERY AGAINST HUNTER UNDER HSCA

60. Paragraphs 1-59 are incorporated as if fully set forth herein.

61. Hunter is a "person" within the meaning of Section 103 of HSCA, 35 P.S. § 6020.503.

62. Neither TCC, Halkias nor Hunter have complied with necessary corporate formalities, Halkias and Hunter have commingled their personal assets with those of TCC, Halkias and Hunter have undercapitalized TCC, and Halkias and Hunter have personally engaged in activities intended to dispose of the assets of TCC for their personal benefit such that the liability protections under Pennsylvania Law for Limited Liability Companies shall not apply.

**WHEREFORE**, the Department requests this Honorable Court to grant judgment against Hunter in favor of the Department in the amount of $888,274.51 plus administrative and legal costs as identified in Paragraph 50 above.

Respectfully submitted,

March 11, 2015

[signature]

ANDERSON LEE HARTZELL
Regional Supervising Counsel
PA Atty. ID No. 47388

MARTHA E. BLASBERG
Regional Counsel
COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF ENVIRONMENTAL PROTECTION
Office of Chief Counsel - Southeast Region
2 East Main Street
Norristown, PA 19401
484-250-5930